# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **JACQUELINE JACKSON,** | ) | |
| 1739 Seaton Street, NW | ) | |
| Washington, DC 20009 | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. _____** |
| | ) | |
| v. | ) | |
| | ) | |
| **THE DISTRICT OF COLUMBIA,** | ) | **Jury Requested** |
| 1350 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20004 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **KATIE LUNDGREN,** | ) | |
| 2201 18th Street, NW | ) | |
| Washington, DC 20009 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **DORIS PEÑA,** | ) | |
| 2201 18th Street, NW | ) | |
| Washington, DC 20009 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| <u>Serve:</u> | ) | |
| | ) | |
| Mayor of the District of Columbia | ) | |
| C/O Muriel Bowser | ) | |
| 1350 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20004 | ) | |
| | ) | |
| Attorney General Brian Schwalb, | ) | |
| C/O Tonia Robinson, | ) | |
| 400 6th Street, NW | ) | |
| Washington, DC 20001 | ) | |
| | ) | |

_____ )

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**COMES NOW** Plaintiff, Jacqueline Jackson, hereinafter "Plaintiff" or "Ms. Jackson,",by and through her undersigned counsel, and sues the District of Columbia (hereinafter, the "District" or "DC"), Katie Lundgren, and Doris Peña (collectively, "Defendants"), and for cause of action states as follows:

## NATURE OF THE CASE

1.     Plaintiff brings this civil action against the above-named parties pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and its relevant regulations, for relief from Defendant's sexual harassment and discriminatory conduct towards Plaintiff on the basis of her race, sex/gender, and retaliation for Plaintiff's prior protected activity.

2.     Plaintiff also brings this action pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12132, *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, as amended, and the DC Family and Medical Leave Act ("FMLA"), as amended, D.C. Code Ann. §§ 32-503, *et seq.*, and their relevant regulations, based on her disability and leave requests.

3.     Plaintiff also brings this civil action under D.C. Code § 22-3704, as the actions complained of herein were intentional and done on the basis of her race and sex.

4.     Further, Plaintiff brings this civil action under the D.C. Code and the common law, for her claims regarding negligence.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims that arises under the laws of the United States, and specifically, Title VII,

the ADA, and FMLA. For the claims brought under the D.C. Code and/or common law, this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

6.       For the Defendants who reside in the District of Columbia and/or have their principal place of business in and/or are employed in the District, this Court has jurisdiction over them via D.C. Code § 13-422. It also has jurisdiction over the Defendants due to their alleged conduct in this matter and/or because they transact business in the District as described herein under D.C. Code § 13-423.

7.       Venue is appropriate under 28 U.S.C. § 1391 and is based on the fact that the actions complained of herein were made by Defendant District of Columbia, a municipality whose agency at issue (DC Public Schools) exists within the District of Columbia, and where Plaintiff and Defendant District of Columbia's employees at issue worked at the time of the events in this matter.

## PARTIES

8.       Plaintiff is a female, who is Black/African American, and has a disability(ies).

9.       Her mailing address is at 1739 Seaton Street, NW, Washington, DC 20009, and during all of the relevant period, was employed by DC Public Schools as an educational aide and paraprofessional.

10.       Defendant District of Columbia is a municipality and federal territory that governs the capital of the United States of America.

11.       Defendant Katie Lundgren is the Principal of Marie Reed Elementary School ("Marie Reed" or "School"), an entity of DC Public Schools ("DCPS"), which is an agency of Defendant District of Columbia. On information and belief, she is white, and lives in or around the Washington, DC, area.

12.     Defendant Peña is a pre-kindergarten ("Pre-K") dual language paraprofessional for Marie Reed, an entity of DC Public Schools, which is an agency of Defendant District of Columbia. On information and belief, she is non-white, lives in or around the Washington, DC area, and is the individual who sexually harassed the Plaintiff.

<u>**EXHAUSTION OF REMEDIES**</u>

13.     Plaintiff filed a complaint against Defendant District of Columbia's agency, DCPS, with the EEOC, alleging violations of Title VII, the ADA, and FMLA, on or about March 4, 2023.

14.     The EEOC held an intake call with Plaintiff on or about July 3, 2023.

15.     Over approximately one and one-half years, Plaintiff participated in the investigation into her complaint and mediation with the Defendant, which was unsuccessful.

16.     On or about July 14, 2023, OHR, who received a copy of her complaint as well, docketed a Charge of Discrimination, which was assigned the same EEOC case number of 570-2023-01670, which included allegations of discrimination and hostile work environment based on sex (female; sexual harassment), race (African American), disability (physical and mental, actual or perceived; reasonable accommodation), filing for FMLA, and retaliation for requesting a reasonable accommodation, filing a request for FMLA, and filing complaints of sexual harassment, protected activities. Plaintiff then filed an Amended Charge on or about December 11, 2023, with additional allegations and claims.

17.     On November 4, 2024, the EEOC issued a Determination of Charge and Right to Sue letter to Plaintiff indicating it was dismissing her case with no finding on the merits of her case and permitting her to file a civil action within 90 days of receipt of that letter.

18.     Thus, Plaintiff has exhausted her administrative remedies and this Complaint is

timely filed.

## RELEVANT FACTS

19.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

### Background

20.     Within a few years of receiving her associates and bachelor's degrees, Plaintiff was hired as an educational aide/paraprofessional at CentroNía, a charter school that works with children in pre-K, in 2005. In that role, her duties involved working with students to ensure they are educated, engaged in their work, safe, and completing their tasks, in conjunction with their teachers.

21.     Over the last years of her tenure there, she was promoted to a Lead Teacher, where she established rules for students to follow to engage in appropriate behavior, observed and evaluated students' performance, behavior, and social development, and then became a Program Coordinator, where she completed various reports to acquire grant funding for the school, supervising coaches and lead teachers on classroom management and student conduct, and working with parents to resolve excessive student behavioral concerns.

22.     Plaintiff continued working at CentroNía until February 2014 and returned to work when she joined the staff at a DCPS school, Harriet Tubman Elementary School, working as a paraprofessional. She worked at this elementary school until the 2018-2019 school year, when she transferred to Marie Reed Elementary School ("Marie Reed").

23.     During her tenure at Marie Reed, she consistently earned "Highly Effective" marks on her yearly performance appraisals.

24.     Plaintiff worked there until the end of the 2022-2023 school year, when she was

terminated.

## Sexual Harassment, FMLA, and Retaliation Allegations

25.    Within a few years of Plaintiff joining CentroNía, another colleague, Defendant Peña, joined the school as well and began causing Plaintiff issues.

26.    In or around June 2007 and again in January 2008, Defendant Peña sexually harassed Plaintiff by assaulting her while they were at work.

27.    In or around June 2007, Plaintiff was watching and assisting some students when Defendant Peña came up to her, squeezed her right breast in a sexual manner, smiled, and said "chi-chis." Plaintiff yelled at her and asked her what was wrong with her, to which Defendant Peña simply smiled. Plaintiff then reported the incident to her supervisor.

28.    In or around January 2008, Defendant Peña came up to Plaintiff again, squeezed her breast in a sexual manner, and began laughing. Plaintiff reported this incident to the school's human resources office and held a meeting with them and Defendant Peña. Human resources instructed Defendant Peña to not touch Plaintiff again, to which Defendant Peña.

29.    Plaintiff informed several colleagues about Defendant Peña's sexual assaults as well around the time in which they occurred.

30.    Plaintiff felt and made it clear that Defendant Peña's sexual touching was unwelcome, as evidenced by her comments to Defendant Peña immediately after the first incident, and her reporting of both incidents to others.

31.    Defendant Peña did not sexually touch other staff at CentroNía, such as their male colleagues, and sexually harassed Plaintiff based on her sex.

32.    When Plaintiff joined Marie Reed in 2018, she learned during their training week

that Defendant Peña worked there as well.

33.     During their first interaction, Plaintiff warned her to not engage in the sexually harassing conduct she did while they were together at their former school, to which Defendant Peña laughed at her.

34.     Plaintiff informed two of her new colleagues at Marie Reed that Defendant Peña had sexual assaulted her at CentroNía.

35.     Beyond that initial interaction, the two employees did not interact much until the 2022-2023 school year.

36.     In or around September 2022, Defendant Peña invited Plaintiff to go to happy hour with some of their colleagues, which Plaintiff declined.

37.     On or about March 1, 2023, Plaintiff and her other union member colleagues, including Defendant Peña, lined up at around 1:45 pm to take a photograph in the school's hallway to unite in solidarity during the start of contract negotiations with DCPS.

38.     While they were lining up and taking the photo, Defendant Peña surprised Plaintiff by standing next to her for the photograph and laying her head on Plaintiff's right breast.

39.     Plaintiff responded by yelling at her something to the effect of: "what is wrong with you! I don't like that!" Plaintiff then switched places with a colleague for the picture.

40.     Defendant Peña's action of laying her head on Plaintiff's breast was of a sexual nature.

41.     Around 3:30 pm the same day on March 1, 2023, Plaintiff was leaving her assigned classroom after class and saw Defendant Peña in the hallway speaking to Ms. Dinora Renderos Palma.

42.    Plaintiff told Defendant Peña that she needed to speak with her because she wanted to make it clear that she wanted the sexually harassing behavior to stop.

43.    After Defendant Peña finished her conversation with Ms. Palma, she, once again, placed her head on Plaintiff's right breast.

44.    Plaintiff immediately responded by yelling at her to make it clear that her sexual advances were not welcome, saying something to the effect of: "This is what I wanted to talk to you about: I don't like that!"

45.    In response to Plaintiff's objections, Defendant Peña simply smiled back at her.

46.    Defendant Peña harassed Plaintiff because she is a female.

47.    Defendant Peña did not sexually harass her male colleagues in the same manner as she harassed Plaintiff.

48.    At approximately 6:00 pm on March 1, 2023, Plaintiff emailed Defendant Lundgren about the sexual harassment/assaults she received from Defendant Peña earlier in the day, and she informed her that this behavior had occurred before in 2007 and 2008.

49.    The next day, March 2, 2023, Plaintiff met with Defendant Lundgren to report her complaints of sexual harassment from Defendant Peña.

50.    During that conversation, Plaintiff reported the incidents from the day before and reiterated that Defendant Peña had done similar things twice at their old school.

51.    Defendant Lundgren's response to Plaintiff's reports of sexual harassment was to point out that Plaintiff had been in her office a lot.

52.    Next, she asked Plaintiff what her plans were for the next school year.

53.    Then, she also told Plaintiff that she would support Plaintiff's request to transfer

out of the school if she made one.

54.    Plaintiff took Defendant Lundgren's comments as a threat for making the complaint against Defendant Peña.

55.    Plaintiff also took Defendant Lundgren's comments as suggesting that she should leave the school.

56.    Defendant Lundgren did not otherwise address the complaint Plaintiff made with her concerning Defendant Peña's actions.

57.    Immediately after the meeting with Defendant Lundgren on March 2, 2023, Plaintiff encountered Defendant Peña, who rolled her eyes at Plaintiff clearly signaling that she was upset with Plaintiff for complaining about the sexual harassment.

58.    On March 3, 2023, Principal Lundgren emailed Plaintiff, stating that she wanted to thank her for discussing concerns about Defendant Peña, and stating that she spoke to Defendant Peña and told her that Plaintiff felt uncomfortable with her physical contact.

59.    Defendant Lundgren also wrote that Defendant Peña said that she was sorry for making Plaintiff feel uncomfortable and that it would not happen again.

60.    Defendant Lundgren advised Plaintiff to keep her distance from Defendant Peña to avoid physical touch that could be uncomfortable or misunderstood in the future.

61.    Defendant Lundgren did not report that Defendant Peña was told she had to keep her distance from Plaintiff.

62.    The principal also stated that she reviewed the security footage from the first incident on March 1, 2023, at around 1:45 p.m., and that it essentially appeared that there was nothing untoward about what Defendant Peña did during the picture.

63.     She did not mention the second incident from around 3:30 pm that day, nor indicated whether she spoke with Defendant Peña about whether Plaintiff's allegations about Defendant Peña perpetrating sexual harassing incidents at their former school, occurred.

64.     Plaintiff replied to the March 3, 2023, email, indicating she disagreed vehemently with Defendant Lundgren's interpretation of the first March 1st incident.

65.     Plaintiff also stated that Defendant Peña did not need to put her head on her breast and she would continue to keep her distance with Defendant Peña, to avoid her violating Plaintiff's body again.

66.     On March 4, 2023, Plaintiff called the police and filed a police report regarding Defendant Peña's two sexual assaults on March 1.

67.     As part of that report, Plaintiff spoke to a detective and a crime victims advocate.

68.     On March 4, 2023, Plaintiff initiated an EEO complaint.

69.     On March 4, 2023, Plaintiff also filed a complaint about the incidents with Defendant Peña and Defendant Lundgren's inaction with DCPS's Office of Labor Management & Employee Relations (LMER).

70.     Defendant Lundgren was carbon copied on that LMER complaint.

71.     Plaintiff conveyed in her LMER complaint that Defendant Peña and Defendant Lundgren were creating a hostile work environment.

72.     Plaintiff also indicated that she was deeply concerned about going back to work due to Defendant Peña's conduct and the lack of assistance from Defendant Lundgren, and that she would like assistance with next steps.

73.     Defendant Lundgren failed to take quick, effective, or remedial action.

74.     Due to the emotional distress she was experiencing as a result of the sexual assaults and harassment, Plaintiff began calling out for work over the next few weeks.

75.     Plaintiff received a note from one of her primary care physicians excusing her from work from March 1, 2023, to March 24, 2023, due to the emotional distress she was experiencing.

76.     Toward the end of March, Defendant Lundgren was ordering Plaintiff back to work, even though she was aware that Plaintiff had been seeking necessary medical assistance due to her emotional distress from the sexual assaults.

77.     By March 28, 2023, Plaintiff sought FMLA leave for PTSD, which another of her primary care doctors signed off on from that day through April 24, 2023.

78.     She received another letter from that doctor that extended her leave through May 1, 2023.

79.     On or about April 11, 2023, Plaintiff received a letter and memorandum from DCPS LMER regarding her sexual harassment complaint submitted on March 4, 2023.

80.     In the memorandum, LMER stated that an investigation was conducted and it was determined that Plaintiff's LMER complaint of sexual harassment from March 4, 2023, was substantiated.

81.     On or about April 29, 2023, Plaintiff received additional medical documentation from a psychiatrist who provided that Plaintiff needed to be off from work from May 1, 2023, through June 1, 2023.

82.     Each of Plaintiff's requests for FMLA over March and April 2023 were approved by the school.

83.    Defendant Lundgren was aware of Plaintiff's FMLA leave status.

**Race, Disability, and Retaliation Allegations**

84.    On September 15, 2022, Plaintiff became injured when she tripped over a student's foot while she was assisting the student and fell down on the ground.

85.    As a result of her fall, she went to the hospital later that day and again on November 14, 2022, which determined that she sprained her knee and her hip.

86.    Plaintiff's knee and hip had been damaged originally in 2020.

87.    As a result of her fall on the job, she applied for worker's compensation and was granted benefits as of November 22, 2022, for causally related medical treatment.

88.    Plaintiff was allowed to return to work with restrictions as of October 11, 2022, in a limited work capacity.

89.    Plaintiff received a reasonable accommodation that allowed her to work in a pre-K class, which required her to use less mobility than if she was in a kindergarten class.

90.    Plaintiff was successfully able to work from October 11, 2022, through the end of the year, in this pre-K classroom with the assistance of a cane to assists with her mobility.

91.    However, in January 2023, Defendant Lundgren asked Plaintiff if she was willing to switch to this classroom because two of her colleagues, who were both Hispanic, were not getting along, and the educational aide sought to transfer out. To do what was best for the students, Plaintiff agreed to switch.

92.    After switching, Plaintiff noticed that the switch back to the kindergarten class exacerbated her conditions because it required additional walking, which caused her significant pain.

93.    A student in the kindergarten class Plaintiff switched to began grabbing Plaintiff's cane, which caused her distress and appeared to be trying to cause Plaintiff to fall.

94.    The student's behavior continued over the first few weeks of January 2023.

95.    Plaintiff spoke with the student and the teacher, Marisa Guillen, about the student's behavior after each incident, but the student continued to grab Plaintiff's cane.

96.    After the fourth or so time that the student grabbed at Plaintiff's cane on January 17, 2023, Plaintiff emailed Ms. Guillen and Defendant Lundgren about how the child harassing her was causing her to feel unsafe in the classroom, that she was experiencing additional pain based on her physical disabilities due to the additional walking she had to do for that class, and that she wanted to transfer back to the pre-K classroom she had been in before the transfer.

97.    Defendant Lundgren spoke with Plaintiff on January 18, 2023, to discuss Plaintiff's concerns about the assignment to that classroom.

98.    After the January 18, 2023, meeting with Defendant Lundgren, Plaintiff sent over her medical documentation showing her medical restrictions to assist Defendant Lundgren in working out a different schedule and classroom assignment.

99.    Defendant Lundgren responded to Plaintiff's email on January 25, 2023, with a new schedule and accommodations for her to review.

100.    Defendant Lundgren advised Plaintiff that she would be splitting her time working in a pre-K class and Ms. Guillen's kindergarten class.

101.    Plaintiff responded to Defendant Lundgren regarding her proposed schedule and ultimately advised that the schedule as a whole was too active of a schedule, as it required her to work in two classes, that she wished she could just stay in one class to best assist her with

accommodations that she needed,

102.    Plaintiff reiterated to Defendant Lundgren in that same email that she should not work lunch duty due to the amount of movement it required.

103.    Ignoring her need for a reasonable accommodation and how working in two separate classrooms would cause her significant difficulty and pain, Defendant Lundgren enforced the new schedule provided to Plaintiff, which was implemented on or about January 31, 2023.

104.    On February 2, 2023, the same student in Ms. Guillen's kindergarten class who had taken Plaintiff's cane on several occasions crawled under a table and crawled between Plaintiff's legs twice to try to pull her down while she was standing and trying to assist students.

105.    Later that day, Plaintiff went into Defendant Lundgren's office and desperately requested to transfer classrooms again because she felt unsafe being around that student and because of her earlier concerns expressed about mobility.

106.    Defendant Lundgren denied her request to change classrooms.

107.    However, Defendant Lundgren granted one of Plaintiff's Hispanic colleague's requests to transfer for reasons unrelated to a medical condition or reasonable accommodation.

108.    Defendant Lundgren mentioned that she had learned Plaintiff sought a transfer to a different school.

109.    Defendant Lundgren proceeded to talk Plaintiff out of her desire to transfer.

110.    Defendant Lundgren promised they would all have a meeting with the child and his/her parents.

111.    The meeting Defendant Lundgren mentioned never occurred.

112.    Plaintiff continued to work the split schedule over the next month until around

March 4, 2023.

## Events Leading to Termination

113.    Plaintiff continued to remain out of school on FMLA leave through the end of May 2023.

114.    On May 8, 2023, Plaintiff emailed LMER concerning the events from September 2022 through March 2023 described herein, to inform them that she felt she was being discriminated against and retaliated against by her school.

115.    On or about June 23, 2023, Plaintiff inquired with HR about returning to work to Marie Reed.

116.    On or about June 24, 2023, an HR representative responded to her inquiry informing her that she should have received a reduction in force ("RIF") letter.

117.    On or about June 27, 2023, Plaintiff received that RIF letter and learned that the letter was dated May 24, 2023.

118.    Plaintiff believes that Defendant Lundgren intentionally failed to provide the RIF letter to her.

119.    The delay in receiving the letter until June 27, 2023, substantially impacted Plaintiff's ability to become gainfully employed.

120.    Plaintiff was terminated for her position at Marie Reed by the end of June 2023.

## COUNT ONE – Against all Defendants
### Sexual Harassment
42 U.S.C. § 2000e-2(a), *et seq.*
(*Hostile Work Environment*)

121.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

122.    Title VII prohibits harassment in employment on the basis of an employee's sex.

123.    As an entity that employs over fifteen (15) employees for each working day, Defendant District of Columbia's agent, DCPS, along with its employees and agents, specifically Defendants Lundgren and Peña, are subject to Title VII.

124.    Defendant District of Columbia is responsible for the acts and/or omissions of its employees under the theory of *respondeat superior*

125.    Plaintiff's sex and protected class is female.

126.    Plaintiff was subjected to unwelcome sexual touching and harassment from the Defendants, through themselves and/or their agents, based on Plaintiff's sex, for their direct conduct against Plaintiff and/or through.

127.    Defendants and/or their agents were acting in the course of and within the course of and scope of their employment when Plaintiff was sexually harassed/assaulted.

128.    Defendant Peña's conduct occurred within the walls of Marie Reed while she and Plaintiff were on duty.

129.    The unwelcome sexual harassment by Defendants and/or their agents toward Plaintiff constitute sexual harassment in violation of Title VII and sex-based discrimination in violation of Plaintiff's right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

130.    Plaintiff immediately reported the sexual harassment by Defendant Peña to Defendant Lundgren.

131.    She also filed a police report and submitted an EEO complaint on March 4, 2023.

132.    Plaintiff also reported Defendant Peña's actions to LMER.

133.    LMER substantiated Plaintiff's sexual harassment claim against Defendant Peña.

134.    Defendant Peña's actions against Plaintiff were severe.

135.    Defendant Peña's actions against Plaintiff were pervasive.

136.    Defendant Peña's actions against Plaintiff caused her severe emotional distress.

137.    Despite Plaintiff's complaints, Defendant District of Columbia failed to take quick, effective, or remedial action.

138.    Defendant District of Columbia had notice and knowledge of unlawful conduct by its agents and, through their failure to remedy and prevent such violations of law, demonstrated deliberate indifference to the risk that such activity would result in constitutional violations against Plaintiff.

139.    Defendants' harassing conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex.

140.    Plaintiff did not solicit or incite the sexual conduct perpetrated by Defendant Peña and she perceived Defendant Peña's conduct to be offensive and/or undesirable, as evidenced by her various reports and complaints.

141.    Defendant District of Columbia, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting sexual harassment in the workplace, under the theory of *respondeat superior*. Such actions were taken by or with the knowledge of the Principal of Marie Reed, Defendant Lundgren. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

142.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering now and into the future, such impact is on-going and permanent in nature, and Plaintiff has incurred lost wages and/or loss of career opportunity, now and into the future, without Plaintiff in any way contributing any negligence thereto.

## COUNT TWO − Against all Defendants Except Defendant Peña
### Disability Harassment
42 U.S.C. § 12132, *et seq*., 29 U.S.C. § 794, *et seq.*, D.C. Code Ann. § 32-503, *et seq.*
(*Hostile Work Environment*)

143.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

144.    The Plaintiff is a qualified individual with disabilities and is entitled to equal rights under the ADA and under the Rehabilitation Act.

145.    As a governmental entity, Defendant District of Columbia's agent, DCPS, along with its employees and agents, must comply with the ADA. As an entity that receives federal financial assistance, it also must comply with the Rehabilitation Act.

146.    Defendants are responsible for the acts and omissions of its employees for actions taken in the course of and scope of their employment under the theory of *respondeat superior*.

147.    Plaintiff requested and was granted a reasonable accommodation after she sprained her hip and knee in September 2022 due to a workplace injury.

148.    In January 2023, against her accommodation, Defendant Lundgren asked Plaintiff to transfer to a kindergarten classroom, which, while she agreed to the transfer to be as amenable as possible, exacerbated her disabilities due to the excessive movement she had to do as part of that class and due to the fact that a student was continually harassing her by trying to take her

walking cane.

149.    Plaintiff sought to transfer out of the classroom due to these things because she felt unsafe due to her prior injuries from falling in September 2022 continuing to worsen from the additional movement she needed to endure, and the student in Ms. Guillen's classroom taking actions that could seriously injure her.

150.    In response, Defendant Lundgren only allowed her to split her time between Ms. Guillen's kindergarten classroom and a pre-k classroom, without providing other solutions that could better accommodate her request.

151.    When Plaintiff sought to transfer again after the same student in the kindergarten class crawled under her legs, Defendant Lundgren denied her request.

152.    Defendant did not engage in an interactive process to address Plaintiff's renewed reasonable accommodation request for transferring out of Ms. Guillen's kindergarten classroom.

153.    Plaintiff requested and obtained FMLA leave for several months, from early March to late May 2023 in part related to the fear of the child continuing to attempt to make her fall, but also as a result of the trauma she experienced from Defendant Peña's two sexual assaults on March 1, 2023, after having perpetrated two incidents against her in 2007 and 2008.

154.    While Plaintiff sought to get well during her leave from approximately early March through the end of May, and then return for the 2023-2024 school year, Plaintiff was terminated.

155.    Defendants were on notice of Plaintiff's disabilities as early as September 2022.

156.    Plaintiff's disabilities were a motivating factor in Defendants' unlawful conduct toward Plaintiff.

157.    Defendants' unlawful conduct created a climate of fear and intimidation for Plaintiff.

158.    The reasons proffered by Defendants for their unlawful conduct are pretextual and the Defendants cannot further offer any legitimate reason for its unlawful conduct.

159.    Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

160.    Defendants' harassing conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her disabilities.

161.    Defendant District of Columbia, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting disability harassment in the workplace under the theory of *respondeant superior*. Such actions were taken by or with the knowledge of the Principal of Marie Reed, Defendant Lundgren. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

162.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and are permanent in nature without Plaintiff in anyway contributing to the negligence thereto.

**COUNT THREE - Against all Defendants Except Defendant Peña**
**Reprisal Harassment**
42 U.S.C. § 2000e-3, *et seq.*; 42 U.S.C. § 12132, *et seq.*, 29 U.S.C. § 794, *et seq.;* D.C. Code
Ann. § 32-503, *et seq.*
(*Hostile Work Environment*)

163.    Plaintiff incorporates all information and allegations contained in the preceding

paragraphs, as if fully set forth herein.

164.    Title VII prohibits reprisal in employment on the basis of an employee reporting harassment, while the ADA and/or Rehabilitation Act prohibit reprisal for requesting an accommodation based on one's disability.

165.    As a governmental entity that employs over fifteen (15) employees for each working day, Defendant District of Columbia's agent, DCPS, along with its employees and agents, must comply with Title VII and the ADA. As an entity that receives federal financial assistance, it also must comply with the Rehabilitation Act.

166.    Plaintiff's protected class is for reprisal, as she requested a reasonable accommodation and reported sexual harassment, discrimination, and retaliation, to Defendant Lundgren and DCPS's LMER office, respectively. She also requested FMLA, which is gives her protected status under that statute.

167.    Plaintiff was subjected to retaliation from the Defendants, through themselves and/or their agents, based on Plaintiff's protected status, for their direct conduct against Plaintiff and/or through *respondeat superior*.

168.    Defendants harassed Plaintiff as a result of her oppositional and/or protected activity by, *inter alia*, not remedying the issue of the student in Ms. Guillen's class regularly trying to injure her, preventing her from allowing her to transfer completely out of Ms. Guillen's class to avoid that student, not properly responding to Plaintiff's concerns regarding the sexual assaults perpetrated on her by Defendant Peña, and ultimately, terminating her.

169.    Defendants and/or their agents were acting within the course of and scope of their employment during these harassing incidents, as all of the conduct occurred within the purview of DCPS while all involved employees were on duty.

170.    The unwelcome retaliatory incidents made by Defendants and/or their agents toward Plaintiff constitute reprisal in violation of Title VII, the ADA, Rehabilitation Act, and FMLA, in violation of Plaintiff's right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

171.    Defendant District of Columbia had notice and knowledge of unlawful conduct by its agents and, through their failure to remedy and prevent such violations of law and by perpetrating such violations of law, established severe and pervasive retaliatory harassment as the custom and policy of the Defendants.

172.    Defendant District of Columbia had notice and knowledge of unlawful conduct by its agents and, through their failure to remedy and prevent such violations of law, demonstrated deliberate indifference to the risk that such activity would result in constitutional violations against Plaintiff.

173.    Defendants' harassing conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her protected activity.

174.    Plaintiff did not solicit or incite the retaliatory conduct and she perceived the conduct to be offensive and/or undesirable.

175.    Defendant District of Columbia, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting retaliatory harassment in the workplace, under the theory of *respondeat superior*. Such actions were taken by or with the knowledge of the Principal of Marie Reed, Defendant Lundgren. Defendants and their agents were

deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

176.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering now and in the future, such impact is on-going and permanent in nature, and Plaintiff has incurred lost wages and/or loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT FOUR − Against all Defendants Except Defendant Peña
### Racial Discrimination
42 U.S.C. § 2000e-2(a), *et seq.*
(*Discrimination*)

177.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

178.    Title VII prohibits discrimination on the basis of race in employment.

179.    As an entity that employs over fifteen (15) employees for each working day, Defendant District of Columbia's agent, DCPS, along with its employees and agents, Defendants Lundgren and Peña, must comply with Title VII.

180.    Plaintiff's race and protected class is African American.

181.    Defendants, through themselves and/or their agents, discriminated against Plaintiff because of her race in violation of Title VII, by engaging in, tolerating or failing to prevent the race-based discrimination alleged herein, and by failing to take affirmative action to correct and redress these unlawful employment practices.

182.    During her employment, Plaintiff's supervisor, Defendant Lundgren, subjected her to racial discrimination when she refused to allow Plaintiff to transfer out of a kindergarten classroom in which her disabilities were being exacerbated due to the additional movement she needed to make in that classroom versus a pre-K classroom and had raised concerns about a student

trying to regularly trip her, unlike her Hispanic colleague that was allowed to switch upon request. Plaintiff was also treated unfavorably as compared with her Hispanic co-worker, Defendant Peña, when she was given an RIF and let go, while Defendant Peña was allowed to continue to working for the school and may not have even been disciplined after she committed two sexual assaults against the Plaintiff.

183.    This conduct and other incidents of discrimination described above were because of Plaintiff's race.

184.    The discrimination directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. The Defendants are, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendants and/or their agents for their direct conduct against Plaintiff and/or through *respondeat superior*.

185.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

186.    Plaintiff has incurred lost wages and/or loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

### COUNT FIVE - Against all Defendants Except Defendant Peña
**Disability Discrimination**
42 U.S.C. § 12132, *et seq.*, 29 U.S.C. § 794, *et seq.*, D.C. Code Ann. § 32-503, *et seq.*
(*Denial of Reasonable Accommodation; Termination*)

187.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

188.    Plaintiff is a disabled individual and a member of a protected class who worked for the Defendants and is entitled to equal rights under the law pursuant to 42 U.S.C. § 12132, *et*

*seq.*, 29 U.S.C. § 794, *et seq.*, D.C. Code Ann. § 32-503, *et seq.*

189.    Defendants, by and through their agents, discriminated against Plaintiff by, *inter alia*, forcing her to endure dangerous classroom conditions in which a student was recklessly trying to injure her, denying her reasonable accommodation request, and ultimately terminating her.

190.    Defendants, by and through their agents, discriminated against Plaintiff by failing to engage fully in the interactive process with Plaintiff after she requested accommodations for her disability by failing to grant her reassignment request.

191.    Plaintiff needed to request leave pursuant to FMLA as a result of Defendant's conduct, which she was granted from March to May 2023.

192.    The Defendants were on notice of Plaintiff's disabilities as early as September 2022.

193.    Plaintiff's disabilities were a motivating factor in Defendants' unlawful conduct toward Plaintiff.

194.    Defendants' unlawful conduct created a climate of fear and intimidation for Plaintiff.

195.    The reasons proffered by Defendants for their unlawful conduct are pretextual and the Defendants cannot further offer any legitimate reason for their unlawful conduct.

196.    Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

197.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her disabilities.

198.    The foregoing actions by Defendants constitute discrimination on the basis of

Plaintiff's disabilities, which have infringed upon Plaintiff's terms and conditions of employment, as well as her right to the full and equal protection of the law.

199.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

200.    Defendants are responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment under the theory of *respondeat superior*.

### COUNT SIX - Against all Defendants Except Defendant Peña
**Reprisal Based Upon Prior EEO Activity**
42 U.S.C. § 2000e-3, *et seq.;* 42 U.S.C. § 12132, *et seq.*, 29 U.S.C. § 794, *et seq.*, D.C. Code Ann. § 32-507, *et seq.*
(*Reprisal Discrimination*)

201.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

202.    Title VII prohibits reprisal in employment on the basis of an employee reporting harassment, while the ADA, Rehabilitation Act, and FMLA, prohibit reprisal for requesting an accommodation based on one's disability.

203.    As a governmental entity that employs over fifteen (15) employees for each working day, Defendant District of Columbia's agent, DCPS, along with its employees and agents, must comply with Title VII, the ADA, and FMLA. As an entity that receives federal financial assistance, it also must comply with the Rehabilitation Act.

204.    Plaintiff's protected class is for reprisal, as she requested a reasonable accommodation and reported sexual harassment, discrimination, and retaliation, to Defendant

Lundgren and DCPS's LMER office, respectively. She also requested FMLA, which is gives her protected status under that statute.

205.     Plaintiff was subjected to retaliation from the Defendants, through themselves and/or their agents, based on Plaintiff's protected status, for their direct conduct against Plaintiff and/or through *respondeat superior*.

206.     Defendants harassed Plaintiff as a result of her oppositional and/or protected activity by, *inter alia*, not remedying the issue of the student in Ms. Guillen's class regularly trying to injure her, preventing her from allowing her to transfer completely out of Ms. Guillen's class to avoid that student, not properly responding to Plaintiff's concerns regarding the sexual assaults perpetrated on her by Defendant Peña, and ultimately, terminating her.

207.     Defendants and/or their agents were acting within the course of and scope of their employment during these harassing incidents, as all of the conduct occurred within the purview of DCPS while all involved employees were on duty.

208.     The unwelcome retaliatory incidents made by Defendants and/or their agents toward Plaintiff constitute reprisal in violation of Title VII, the ADA, Rehabilitation Act, and FMLA, in violation of Plaintiff's right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

209.     Defendant District of Columbia had notice and knowledge of unlawful conduct by its agents and, through their failure to remedy and prevent such violations of law and by perpetrating such violations of law, established severe and pervasive retaliatory harassment as the custom and policy of the Defendants.

210.     Defendant District of Columbia had notice and knowledge of unlawful conduct by its agents and, through their failure to remedy and prevent such violations of law, demonstrated

deliberate indifference to the risk that such activity would result in constitutional violations against Plaintiff.

211.     Defendants' harassing conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her protected activity.

212.     Plaintiff did not solicit or incite the retaliatory conduct and she perceived the conduct to be offensive and/or undesirable.

213.     Defendant District of Columbia, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting retaliatory harassment in the workplace, under the theory of *respondeat superior*. Such actions were taken by or with the knowledge of the Principal of Marie Reed, Defendant Lundgren. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

214.     Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

215.     Plaintiff has incurred lost wages and/or loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

### COUNT SEVEN - Against all Defendants Except Defendant Peña
**Wrongful Discharge**
42 U.S.C. § 2000e-2, *et seq.*; 42 U.S.C. § 12132, *et seq.*, 29 U.S.C. § 794, *et seq.*, D.C. Code Ann. § 32-503, *et seq.*
(*Termination*)

216.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

217.    Title VII prohibits discrimination on the basis of sex, race, and reprisal, in employment.

218.    Title II of the ADA and Section 504 of the Rehabilitation Act prohibit discrimination on the basis of an employee's disability.

219.    FMLA makes it unlawful an employer to discharge an employee for filing a complaint under that act.

220.    Plaintiff was well-qualified for the educational aide/paraprofessional position at Marie Reed that she held, as she was never written up for performance issues, and had "Highly Effective" performance appraisals, for example.

221.    Even still, due to her race, disability, request for reasonable accommodation, reporting of sexual misconduct by Defendant Peña, request and taking of FMLA, for example, she was *de facto* terminated on or about June 27, 2023, when she received the RIF letter.

222.    Due to the continuous intentionally discriminatory and harassing in nature actions of Defendants and/or their agents, Marie Reed became an intolerable working environment for Plaintiff, causing her extraordinary and severe emotional distress, which was exacerbated when she was let go from working at there on or about June 27, 2023.

223.    Defendants are directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

224.    As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional

opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

225.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

226.    Plaintiff has incurred lost wages, loss of reputation and/or loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

<u>**COUNT EIGHT - Against all Defendants**</u>
**Intentional Infliction of Emotional Distress**
Common Law Claim
(*Sexual Harassment, Retaliation, and Discrimination*)

227.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

228.    Plaintiff was subjected to multiple sexual assaults by Defendants, through their agents, Defendant Peña, and upon reporting that criminally harassing conduct, Defendants' managers failed to properly investigate and/or remedy this conduct.

229.    Plaintiff was also prevented from transferring to a different classroom even after she raised concerns as early as January 17, 2023, that a student in Ms. Guillen's class had been actively trying to trip her, which could cause severe injuries, given she had been hurt in September 2022. The Defendants and/or their agents knew about this prior September 2022 injury and the student's harassing actions toward her, and failed to properly intervene to remedy her concerns.

230.    Plaintiff was also terminated just a few short months after reporting her concerns related to both the sexual harassment and student's harassment against her.

231.    Defendants and/or their agents were acting within the course of and scope of their employment when they intentionally, sexually assaulted, retaliated against, and harassed Plaintiff,

and intentionally and/or recklessly caused her to suffer severe emotional distress by failing to mitigate her harm and concerns, and putting in her a position where she feared and was deeply stressed about coming into work every day because she never knew what terrible acts Defendant Peña and Ms. Guillen's student would perpetrate against her, such as sexual touching and grabbing her cane to make her fall, respectively.

232.    Defendants' conduct toward Plaintiff in sexual assaulting and harassing her, and failing to mitigate and/or remedy her harm and concerns, was extreme and outrageous conduct beyond the realm of a normal workplace and in a civilized society.

233.    Defendants had notice and knowledge of unlawful conduct by Defendants' agents and, through their failure to remedy and prevent Defendant Peña from committing sexual harassment and/or assaults against Plaintiff and the student in Ms. Guillen's class from trying to trip her on several occasions.

234.    Defendants, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting unwelcome sexual touching and failing to remedy concerns on sexual harassment and disability discrimination and harassment, i.e., a hostile work environment. Such actions were taken by or with the knowledge of Defendants and/or their agents. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

235.    Plaintiff was an employee of Defendant District of Columbia's school, and as a result, the District owed Plaintiff a duty to provide her with a safe working environment free from sexual assault, discrimination, and harassment.

236.    Defendants' conduct through themselves or their agents, actually and proximately caused the severe emotional distress the Plaintiff suffered, and was done with malice and/or reckless indifference.

237.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

238.    Plaintiff did not contribute any negligence to the above actions for which she complains.

<u>**COUNT NINE - Against all Defendants**</u>
**Negligent Infliction of Emotional Distress**
Common Law Claim
(*Sexual Harassment, Retaliation, and Discrimination*)

239.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

240.    Plaintiff was subjected to multiple sexual assaults by Defendants, through their agents, Defendant Peña, and upon reporting that criminally harassing conduct, Defendants' managers failed to properly investigate and/or remedy this conduct.

241.    Plaintiff was also prevented from transferring to a different classroom even after she raised concerns as early as January 17, 2023, that a student in Ms. Guillen's class had been actively trying to trip her, which could cause severe injuries, given she had been hurt in September 2022. The Defendants and/or their agents knew about this prior September 2022 injury and the student's harassing actions toward her, and failed to properly intervene to remedy her concerns.

242.    Plaintiff was also terminated just a few short months after reporting her concerns related to both the sexual harassment and student's harassment against her.

243.    Defendants and/or their agents were acting within the course of and scope of their

employment when they intentionally, sexually assaulted, retaliated against, and harassed Plaintiff, and negligently caused her to suffer severe emotional distress by failing to mitigate her harm and concerns, and putting in her a position where she feared and was deeply stressed about coming into work every day because she never knew what terrible acts Defendant Peña and Ms. Guillen's student would perpetrate against her, such as sexual touching and grabbing her cane to make her fall, respectively.

244.    Defendants' conduct toward Plaintiff in sexual assaulting and harassing her, and failing to mitigate and/or remedy her harm and concerns, was extreme and outrageous conduct beyond the realm of a normal workplace and in a civilized society.

245.    Defendants had notice and knowledge of unlawful conduct by Defendants' agents and, through their failure to remedy and prevent Defendant Peña from committing sexual harassment and/or assaults against Plaintiff and the student in Ms. Guillen's class from trying to trip her on several occasions.

246.    Defendants, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated Federal law prohibiting unwelcome sexual touching and failing to remedy concerns on sexual harassment and disability discrimination and harassment, i.e., a hostile work environment. Such actions were taken by or with the knowledge of Defendants and/or their agents. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurred at Marie Reed.

247.    Plaintiff was an employee of Defendant District of Columbia's school, and as a result, the District owed Plaintiff a duty to provide her with a safe working environment free from

sexual assault, discrimination, and harassment.

248.    Defendants' conduct through themselves or their agents, actually and proximately caused the severe emotional distress the Plaintiff suffered, in a negligent manner.

249.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

250.    Plaintiff did not contribute any negligence to the above actions for which she complains.

<u>COUNT TEN - Against all Defendants Except Defendant Peña</u>
**Negligence**
Common Law
(*Failure to Act on Reports of Sexual Harassment, Discrimination, and Harassment*)

251.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

252.    Defendant District of Columbia is a governmental municipality that operates and/or oversees DCPS, of which Marie Reed is a member school, in the District of Columbia and is subject to DC common law.

253.    Defendants owe a duty of care to protect and safeguard their employees from discrimination, harassment, and retaliation, and to generally provide their employees with a safe place to work.

254.    Defendants and their agents and representatives violated their duty of care to Plaintiff when they failed to prevent, investigate, and/or remedy the multiple sexual assaults by Defendant Peña, even after Plaintiff made numerous complaints of her harassing conduct to Defendant Lundgren, for example.

255.    They also violated their duty of care to Plaintiff when they kept her in the same

classroom as a child who tried to take away her cane and walked through her legs on several occasions in an effort to trip her, even after Plaintiff raised concerns to the teacher, Ms. Guillen, and the Principal, Defendant Lundgren.

256.    Defendants and/or their agents were acting within the course of and scope of their employment when they intentionally, recklessly, and/or negligently, sexually assaulted Plaintiff, allowed her to remain in a class with a student who intended to injure her, and caused her to suffer severe emotional distress.

257.    Defendants' conduct through themselves or their agents, actually and proximately caused the severe emotional distress the Plaintiff suffered.

258.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

259.    Plaintiff also lost out on substantial income based on being terminated when she raised concerns about the issues raised here.

260.    Plaintiff did not contribute any negligence to the above actions for which she complains.

## COUNT ELEVEN – Against all Defendants
### Violation of Hate Crime Statute
D.C. Code § 22-3704
(*Sexual Assault*)

261.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

262.    Plaintiff's sex is female.

263.    Plaintiff was subjected to sexual assault by Defendants through their respective agents based on Plaintiff's sex.

264.    Defendants and/or their agents were acting within the course of and scope of their employment when they intentionally, sexually assaulted Plaintiff.

265.    Defendants had notice and knowledge of unlawful conduct by Defendants' agents and, through their failure to remedy and prevent Defendant Peña from committing sexual assaults against Plaintiff, they were allowed to continue March 2023, and to which Defendant Peña was not disciplined for her conduct.

266.    Defendants, implicitly or explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of their agents, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated DC and Federal law prohibiting unwelcome sexual touching and sexual-based violence. Such actions were taken by or with the knowledge of the Defendants. Defendants and their agents were deliberately indifferent to the unlawful and unconstitutional activity that occurs at Marie Reed.

267.    Due to Defendants and/or their agents' actions, Plaintiff's person was violated, and she was humiliated, embarrassed, and made to endure a great amount of pain and suffering of such impact that is on-going and permanent in nature.

268.    Plaintiff did not contribute any negligence to the above actions for which she complains.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Jacqueline Jackson, respectfully prays that this Court grant her the following relief:

a.) Award compensatory damages of in excess of Five- Hundred Thousand Dollars ($500,000.00), which would fully compensate Plaintiff for the economic loss,

physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendants alleged herein;

b.) Award any relevant back pay she may have been out;

c.) Award punitive damages for the intentional torts alleged above;

d.) Award reasonable attorney's fees;

e.) Award equitable, declaratory, and injunctive relief; and

f.) Order such other relief as this Honorable Court deems just and proper.

<u>EQUITABLE RELIEF</u>

g.) Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations

contained within the preceding paragraphs, as fully set forth herein; and

h.) Plaintiff requests all equitable relief which can be afforded her under the law.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury of all issues in this case so triable.

Dated: February 2, 2025

Respectfully submitted,

TULLY RINCKEY PLLC

/s   *Donna Williams Rucker*_____
Donna Williams Rucker, Bar No. 40918
Managing Partner

/s   *Michael Goldstein*_____
Michael R. Goldstein
Bar No. 1602033
Associate

2001 L Street NW, Suite 902
Washington, DC 20036
Tel: (202) 787-1900
Fax: (202) 640-2059
Email: drucker@fedattorney.com
Mgoldstein@fedattorney.com

*Attorneys for Plaintiff*