**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACQUELINE JACKSON,<br>Plaintiff,<br>v.<br>DISTRICT OF COLUMBIA, *et al.*,<br>Defendants. | Civil Action No. 25-302 (EGS) |

**MEMORANDUM OPINION**

Plaintiff Jacqueline Jackson ("Ms. Jackson") brings this suit against the District of Columbia (the "District"), Katie Lundgren ("Ms. Lundgren"), and Doris Peña ("Ms. Peña") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*; Section 504 of the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*; and the D.C. Family and Medical Leave Act ("D.C. FMLA"), D.C. Code § 32-503 *et seq.* *See* Compl., ECF No. 1.[1] Ms. Jackson also alleged four tort claims against Defendants. *See id.* In February 2026, the Court granted Defendants' Motion for Summary Judgment on the tort claims against the District and the individual defendants

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

to the extent they were sued in their official capacities. *See Jackson v. District of Columbia*, Civil Action No. 25-302, 2026 WL 493943 (D.D.C. Feb. 23, 2026).

Pending before the Court is Defendants' Motion to Dismiss Ms. Jackson's Complaint ("Motion to Dismiss"). *See* Defs.' Mot. to Dismiss Pl.'s Compl. ("Mot."), ECF No. 12. Ms. Jackson opposes the Motion. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss. Pl.'s Compl. ("Opp'n"), ECF No. 16. Defendants filed a Reply, *see* Defs.' Reply in Further Supp. of their Mot. to Dismiss Pl.'s Compl. ("Reply"), ECF No. 17; and Ms. Lundgren and Ms. Peña filed an additional Reply regarding any tort claims against them, *see* Ms. Lundgren's and Ms. Peña's[2] Reply in Further Supp. of their Mot. to Dismiss Pl.'s Compl. Against Them Individually ("Individual Reply"), ECF No. 18.

Upon careful consideration of the Motion, Opposition, and Replies thereto; and for the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A. Factual Background

The following facts are taken from the allegations in the Complaint, which the Court assumes are true for the purposes of

[2] Collectively, the "Individual Defendants."

deciding this motion and construes in Ms. Jackson's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

Ms. Jackson is a Black woman with disabilities. *See* Compl., ECF No. 1 ¶ 8. She started her career as an "educational aid/paraprofessional" at CentroNia, where she worked until February 2014 when she joined the D.C. public school system ("DCPS"). *Id.* ¶¶ 20, 22. She began working at Marie Reed Elementary School ("Marie Reed") during the 2018-19 school year. *Id.* ¶ 22.

### 1. Sexual Harassment Allegations

Ms. Jackson first met Ms. Peña when they worked together at CentroNia. *See id.* ¶ 25. Ms. Jackson alleges that Ms. Peña "sexually harassed [her] by assaulting her while they were at work" in June 2007 and January 2008, which she reported to CentroNia colleagues at the time. *See id.* ¶¶ 26-30. When she joined the staff at Marie Reed, she learned that Ms. Peña also worked there, but besides "warn[ing] her to not engage in the sexually harassing conduct she did while they were at their former school," they "did not interact much until the 2022-2023 school year." *Id.* ¶¶ 32-33, 35.

On March 1, 2023, Ms. Jackson and other union members, including Ms. Peña, "lined up at around 1:45 pm to take a photograph in the school's hallway." *Id.* ¶ 37. Ms. Jackson alleges that when they were lining up, Ms. Peña "surprised [her]

by standing next to her for the photograph and laying her head on [her] right breast," which she considered to be "of a sexual nature." *Id.* ¶¶ 38, 40. Ms. Jackson "yelled" at Ms. Peña and switched places with another colleague for the photograph. *Id.* ¶ 39.

Around 3:30 pm that same day, Ms. Jackson was leaving her classroom when she ran into Ms. Peña speaking to another colleague in the hallway. *Id.* ¶ 41. Ms. Jackson told her that "she needed to speak with her because she wanted to make it clear that she wanted the sexually harassing behavior to stop." *Id.* ¶ 42. Ms. Jackson alleges that after Ms. Peña finished her conversation with their other colleague, she "once again, placed her head on [Ms. Jackson's] right breast." *Id.* ¶ 43. Ms. Jackson "immediately responded by yelling at her to make it clear that the sexual advances were not welcome," and in response, Ms. Peña "simply smiled back at her." *Id.* ¶¶ 43–44.

That evening, Ms. Jackson emailed Ms. Lundgren, the principal of Marie Reed, to inform her of Ms. Peña's behavior, both that day and at their previous job. *See id.* ¶¶ 11, 48. The next day, on March 2, 2023, Ms. Jackson met with Ms. Lundgren to "report her complaints of sexual harassment from [Ms. Peña]." *Id.* ¶ 49. Ms. Lundgren responded to Ms. Jackson by "point[ing] out that [Ms. Jackson] had been in her office a lot." *Id.* ¶ 51. Ms. Lundgren also "asked [Ms. Jackson] what her plans were for

the next school year" and that she would "support [Ms. Jackson's] request to transfer out of the school if she made one." *Id.* ¶¶ 52-53. Ms. Jackson understood Ms. Lundgren's comments "as a threat" and as "suggesting that she should leave the school." *Id.* ¶¶ 54-55.

The next day, on March 3, 2023, Ms. Lundgren emailed Ms. Jackson, "thank[ing] her for discussing concerns about [Ms. Peña] and stating that she spoke to [Ms. Peña] and told her that [Ms. Jackson] felt uncomfortable with her physical contact." *Id.* ¶ 58. She wrote that Ms. Peña said "that she was sorry for making [Ms. Jackson] uncomfortable and that it would not happen again," and Ms. Lundgren advised Ms. Jackson to "keep her distance from Ms. Peña to avoid physical touch that could be uncomfortable or misunderstood in the future." *Id.* ¶¶ 59-60. Finally, Ms. Lundgren stated that she reviewed security footage from the first incident, but that it "essentially appeared that there was nothing untoward" about what had occurred. *Id.* ¶ 62. Ms. Lundgren did not mention the second incident. *Id.* ¶ 63.

Ms. Jackson was not satisfied with Ms. Lundgren's response, and she emailed Ms. Lundgren to tell her that she "disagree vehemently" with Ms. Lundgren's interpretation of the incidents. *Id.* ¶ 64. She also reiterated in her email that Ms. Peña should not put her head on her breast, and that she would continue to

keep her distance from Ms. Peña to "avoid [Ms. Peña] violating [Ms. Jackson's] body again." *Id.* ¶ 65.

On March 4, 2023, Ms. Jackson filed a police report regarding the incidents with Ms. Peña and initiated an EEO complaint and a complaint with DCPS's Office of Labor Management & Employee Relations ("LMER"). *See id.* ¶¶ 66, 68-69.

### 2. Racial and Disability Harassment Allegations

In a separate incident from her encounters with Ms. Peña, Ms. Jackson alleges that she became injured when "she tripped over a student's foot when she was assisting the student and fell down on the ground" on September 15, 2022. *Id.* ¶ 84. Ms. Jackson's knee and hip had been "originally damaged" in 2020. *See id.* ¶ 86. After her fall at Marie Reed, she went to the hospital the same day and for a follow-up appointment on November 14, 2022, where it was determined she sprained her knee and hip. *Id.* ¶ 85. She was allowed to return to work "in a limited work capacity" on October 11, 2022, and she received a "reasonable accommodation that allowed her to work in a pre-K class, which required her to use less mobility than if she was in a kindergarten class." *Id.* ¶¶ 88-89.

In January 2023, Ms. Lundgren asked if she was willing to switch to a kindergarten classroom full-time because the two employees who worked in that classroom, who were both of Hispanic descent, were not getting along. *Id.* ¶ 91. Ms. Jackson

agreed to switch "[t]o do what was best for the students." *Id.* Ms. Jackson, however, noticed that the switch to the kindergarten "exacerbated her condition because it required additional walking, which caused her significant pain." *Id.* ¶ 92.

In her new kindergarten classroom, a student began "grabbing [Ms. Jackson's] cane . . . [which] appeared to be trying to cause [her] to fall." *Id.* ¶ 93. This behavior continued throughout the first weeks of January 2023, and while Ms. Jackson spoke with the student and the teacher in the classroom, Ms. Guillen, after each incident, the student continued to grab her cane. *Id.* ¶ 94–95. On January 17, 2023, Ms. Jackson emailed Ms. Guillen and Ms. Lundgren about how the child "harassing her was causing her to feel unsafe in the classroom, that she was experiencing additional pain based on her physical disabilities due to the additional walking she had to do," and that "she wanted to transfer back to the pre-K classroom she had been in before the transfer." *Id.* ¶ 96. Ms. Lundgren met with Ms. Jackson the next day about her concerns, and Ms. Jackson provided Ms. Lundgren with "medical documentation showing her medical restrictions to assist [Ms. Lundgren] in working out a different schedule and classroom assignment." *Id.* ¶ 97–98.

On January 25, 2023, Ms. Lundgren provided Ms. Jackson with a new schedule to accommodate her requests, which would have her splitting her time between Ms. Guillen's kindergarten classroom and a pre-K classroom. *Id.* ¶ 99–100. Ms. Jackson responded to Ms. Lundgren's "proposed schedule," advising Ms. Lundgren that "the schedule as a whole was too active . . . as it required her to work in two classes," and that she "wished she could just stay in one class to best assist her accommodations that she needed." *Id.* ¶ 101. However, Ms. Lundgren "enforced the new schedule," which was implemented on January 31, 2023. *Id.* ¶ 103.

On February 2, 2023, the same student with whom she had trouble in January "crawled under the table and crawled between [Ms. Jackson's] legs twice to try to pull her down while she was standing and trying to assist students." *Id.* ¶ 104. Ms. Jackson returned to Ms. Lundgren's office later that day and "desperately requested" to transfer classrooms because she felt unsafe being around that particular student and due to her mobility concerns. *Id.* ¶ 105. Ms. Lundgren denied her request, but she promised to have a meeting with the student and their parents. *Id.* ¶ 106, 110. However, the promised meeting never occurred. *Id.* ¶ 111. Ms. Jackson also alleges that Ms. Lundgren "proceeded to talk [Ms. Jackson] out of her desire to transfer." *Id.* ¶ 109.

### 3. FMLA Leave and Termination

"Due to the emotional distress she was experiencing as a result of the sexual assaults and harassment," Ms. Jackson began "calling out" of work in March 2023. *Id.* ¶ 74. She received a note from her doctor excusing her from work between March 1 and March 24, 2023 due to her "emotional distress." *Id.* ¶ 75. On March 28, 2023, Ms. Jackson sought FMLA leave for Post-Traumatic Stress Disorder. *Id.* ¶ 77. Another doctor signed off on her request from March 28 through April 24, 2023. *Id.* Ultimately, she extended her leave through May 2023. *Id.* ¶ 78, 112. Her March and April requests were approved by the school. *Id.* ¶ 82.

On April 29, 2023, Ms. Jackson received additional documentation from a psychiatrist who stated that Ms. Jackson "needed to be off from work from May 1, 2023 through June 1, 2023." *Id.* ¶ 81.

On May 8, 2023, Ms. Jackson emailed LMER to inform them that "she felt she was being discriminated against and retaliated against by her school." *Id.* ¶ 114.

On June 23, 2023, Ms. Jackson asked Human Resources ("HR") about returning to work at Marie Reed. *Id.* ¶ 115. The next day, an HR representative contacted her and informed her that she should have received a reduction-in-force ("RIF") letter. *Id.* ¶ 116. She received the letter on June 27, 2023 and "learned that the letter was dated May 24, 2023." *Id.* ¶ 117. Ms. Jackson

believes that Ms. Lundgren intentionally failed to provide the letter to her, which "substantially impacted [her] ability to become gainfully employed." *Id.* ¶ 118-19.

**B. Procedural Background**

On March 4, 2023, Ms. Jackson filed an EEOC claim against DCPS. *Id.* ¶ 13. On July 14, 2023, the D.C. Office of Human Rights ("OHR") docketed her Charge of Discrimination. *Id.* ¶ 16. Ms. Jackson filed an Amended Charge on December 11, 2023. *Id.* On November 4, 2024, Ms. Jackson received a Determination of Charge and Right to Sue letter from the EEOC. *Id.* ¶ 17.

Ms. Jackson timely filed her Complaint on February 2, 2025. *See* Compl., ECF No. 1. In her Complaint, Ms. Jackson alleges eleven counts of hostile work environment, discrimination, retaliation, and common law torts. *See* Compl., ECF No. 1 ¶¶ 121-268 (alleging Count I: Sexual Harassment in violation of Title VII; Count II: Disability Harassment in violation of the ADA, the Rehabilitation Act, and D.C. FMLA; Count III: Reprisal Harassment in violation of Title VII, the ADA, the Rehabilitation Act and D.C. FMLA; Count IV: Racial Discrimination in violation of Title VII; Count V: Disability Discrimination in violation of the ADA, the Rehabilitation Act, and D.C. FMLA; Count VI: Reprisal Based Upon Prior EEO Activity in violation of Title VII, the ADA, the Rehabilitation Act, and D.C. FMLA; Count VII: Wrongful Discharge in violation of Title

VII, the ADA, the Rehabilitation Act, and D.C. FMLA; Count VIII: Intentional Infliction of Emotional Distress; Count IX: Negligent Infliction of Emotional Distress; Count X: Negligence; and Count XI: Violation of Hate Crime Statute in violation of D.C. Code § 22-3704).

Defendants filed their Motion to Dismiss on March 13, 2025, seeking to dismiss Ms. Jackson's Complaint in its entirety. *See* Mot., ECF No. 12. The same day, Defendants filed their Motion for Partial Summary Judgment, arguing that Counts VII-IX against the District of Columbia are barred because Ms. Jackson failed to comply with the notice requirements of D.C. Code § 12-309. *See* Def.'s Mot. for Partial Summ. J., ECF No. 14. Defendants' Motion for Partial Summary Judgment was unopposed, and the Court granted the motion on February 23, 2026, dismissing the tort claims against the District and the Individual Defendants to the extent they were sued in their official capacities. *See* Order, ECF No. 22.

Ms. Jackson filed her Opposition to the Motion to Dismiss on April 10, 2025. *See* Opp'n, ECF No. 16. Defendants filed their Reply on April 24, 2025, *see* Reply, ECF No. 17; and the Individual Defendants filed their Reply regarding Counts VIII-XI the same day, *see* Individual Reply, ECF No. 18.

The motion is ripe and ready for the Court's adjudication.

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(6)[3]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a

[3] As a threshold matter, Ms. Jackson argues that "Defendants have effectively converted their Motion to Dismiss as a Motion for Summary Judgment under Fed. R. Civ. P. 56 by including two exhibits to their Motion," and therefore she is "compelled to oppose their Motion as one for Summary Judgment." Opp'n, ECF No. 16 at 8 n.1. Ms. Jackson is mistaken. "Where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion [to dismiss] papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002). Defendants attach security footage of the incidents that gives rise to the Complaint, which are explicitly referenced in the Complaint. The Court can consider these exhibits if it so chooses. However, it is premature at this stage to consider these exhibits, and therefore all exhibits attached to both the Motion to Dismiss and Ms. Jackson's Opposition will be disregarded. The Court will treat this motion as a motion to dismiss.

"sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

When evaluating a 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Furthermore, the court "must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations omitted). The court must also give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Id.* at 677 (internal quotations omitted). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A. Plaintiff's Abandoned and Conceded Claims (Counts II–III, V, VII–XI)

#### 1. Plaintiff's Abandoned Claims (Counts VII–XI)

In her Opposition, Ms. Jackson expressly abandons four of her claims; she states that "she does not intend to pursue her tort claims any longer." Opp'n, ECF No. 16 at 19 n.3. Therefore, the Court will dismiss Counts VII–XI to the extent she sued the individual defendants in their individual capacities.

Ms. Jackson also abandoned her wrongful discharge claim (Count VII). "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); *see also Fox v. Am. Airlines, Inc.*, No. 02-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004). Ms. Jackson fails to address Defendants' arguments regarding her wrongful discharge claim in her Opposition. *See generally* Opp'n, ECF No. 16. Accordingly, the Court will dismiss Count VII of the Complaint.

**2. Plaintiff's Conceded Claims (Counts II, III, V)**

Local Rule 7.1(b) states:

> Within 14 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points *and authorities* in opposition to the motion. If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

(emphasis added). And as noted above, if a plaintiff files an opposition addressing only certain points raised by the defendant in their motion to dismiss, those points can be considered conceded by the court. *See Fox*, 2003 WL 21854800, at *2.

In her Opposition to Defendants' arguments regarding Counts II (disability harassment), III (reprisal harassment), and V (disability discrimination), Ms. Jackson restates the factual allegations in her Complaint and comes to legal conclusions without providing supporting authority. *See* Opp'n, ECF No. 16 at 25–31, 34. Ms. Jackson cites no legal authority to refute Defendants' arguments regarding Counts II (disability harassment) and III (reprisal harassment), *see id.* at 25-31; other than citing a case that states the elements for a hostile work environment claim, *see id.* at 27, 30 (citing *Trant v. Murray*, 589 F. Supp. 3d 50, 54 (D.D.C. 2022). Similarly, Ms. Jackson cites no legal authority to refute Defendants' arguments regarding Count V (disability discrimination), citing only *Ward*

*v. McDonald*, 762 F. 3d 24, 31, 32 (D.C. 2014), which states the elements for a failure to accommodate claim. *See* Opp'n, ECF No. 16 at 34.

In sum, Ms. Jackson provides no legal authority to refute Defendant's arguments that Counts II (disability harassment), III (reprisal harassment), and V (disability discrimination) should be dismissed.[4] "The court's role is not to act as an advocate for the plaintiff and construct legal arguments on [their] behalf in order to counter those in the motion to dismiss." *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002). Therefore, the Court concludes that Ms. Jackson has conceded the Defendants' arguments as to Counts II, III, and V, and those counts will be dismissed.

**B. Claims Against Individual Defendants**

Defendants argue that Title VII, the ADA, the Rehabilitation Act, and the D.C. FMLA do not provide for claims of individual liability, and therefore the claims against Ms. Lundgren and Ms. Peña must be dismissed. *See* Mot. to Dismiss, ECF No. 12 at 20, 31. Regarding Ms. Jackson's sex, race, and disability discrimination claims under Title VII, the ADA, and the Rehabilitation Act, Defendants are correct. While she does

[4] Nor does she make any legal argument as to why these claims would succeed on the merits, even though she claims to be responding to the Motion to Dismiss as an Opposition to a Motion for Summary Judgment. *See* Opp'n, ECF No. 16 at 8 n.1.

not explicitly state whether she sues Ms. Lundgren and Ms. Peña in their official or individual capacities, the Court construes the remainder of Ms. Jackson's allegations against Ms. Lundgren and Ms. Peña under these statutes as that she is suing them in their individual capacity, as Ms. Jackson argues at other times in her opposition that liability is imputed to the District of Columbia for Ms. Lundgren and Ms. Peña's behavior. *See, e.g.*, Opp'n, ECF No. 16 at 23. However, these statutes do not provide for individual liability. *See Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 186 (D.D.C. 2008) (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) ("Title VII does not impose liability on individuals in their personal capacity."); *Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 8 n.8 (D.D.C. 2008) ("[T]here is no individual liability under the ADA or the Rehabilitation Act.").

Ms. Jackson also claims that Ms. Lundgren retaliated against her for requesting leave under the D.C. FMLA. *See* Compl., ECF No. 1 ¶¶ 166, 204. This Court does not need to determine whether the D.C. FMLA statute provides for individual liability, as Ms. Jackson explicitly states that "Defendants and/or their agents were acting within the course of and scope of their employment during these harassing incidents." *Id.* ¶¶ 169, 207. The Court interprets these statements to mean that she is *not* suing Ms. Lundgren in her individual capacity for

violations of the D.C. FMLA, but rather as an agent of her employer. Because Ms. Jackson does not allege that Ms. Lundgren retaliated against her in her individual capacity under the D.C. FMLA, this claim against Ms. Lundgren will be dismissed.

Accordingly, Count I against Ms. Peña will be dismissed, and Counts II, III, V, and VI against Ms. Lundgren will be dismissed. Only Ms. Jackson's claims against the District remain.

### C. CMPA's Applicability

The District argues that Ms. Jackson has failed to exhaust her administrative remedies because her claims are subject to the D.C. Comprehensive Merit Personnel Act ("CMPA"). *See* Opp'n, ECF No. 16 at 18-20. "With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind." *Osekre v. Gage*, 698 F. Supp. 2d 209, 211 (D.D.C. 2011). However, an employee alleging unlawful discrimination must pursue their claims through the Office of Human Rights. *See King v. Kidd*, 640 A.2d 656, 664 (D.C. 1993); *Davis v. District of Columbia*, 949 F. Supp. 2d 1, 13 (D.D.C. 2013) ("[T]he CMPA does not apply to allegations of discrimination.").

Ms. Jackson's remaining claims are that the District discriminated against her. Allegations of discrimination are squarely within the investigatory purview of the D.C. Office of

Human Rights. Ms. Jackson filed a complaint with the EEOC and the D.C. Office of Human Rights.[5] Compl., ECF No. 1 ¶¶ 13, 16. She received a Determination of Charge and Right to Sue letter on November 4, 2024. *Id.* ¶ 17. Accordingly, the Court concludes that Ms. Jackson has exhausted her administrative remedies.

### D. Plaintiff's Remaining Claims

#### 1. Hostile Work Environment (Count I)

Under Title VII, it is an "unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... sex, or national origin." 42 U.S.C. § 2000e-2(a). To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

[5] In the District of Columbia, the EEOC and the D.C. Office of Human Rights operate on a work sharing agreement, "and under the terms of this agreement, charges filed with the EEOC are deemed simultaneously filed with the DCOHR." *Lee v. District of Columbia*, 733 F. Supp. 2d 156, 161 (D.D.C. 2010) (citing *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372–73 (D.C. Cir. 2008)).

To make a *prima facie* Title VII hostile work environment due to sexual harassment, a plaintiff must show:

> (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome[ ] sexual harassment ...; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment ...; and (5) the existence of respondeat superior liability.

*Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002). While Ms. Jackson is not required to plead in her Complaint all elements of a *prima facie* case or "plead law or match facts to every element of a legal theory, the alleged facts [in her Complaint] must be able to support such a claim." *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 9 (D.D.C. 2011) (quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)).

The Court concludes that Ms. Jackson has not pled sufficient facts to show that *respondeat superior* liability plausibly exists. Ms. Jackson's alleged harasser was her coworker, Ms. Peña. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). An employer may be held liable only "if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action."

*Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999).

When considering whether an employer's response to alleged harassment is adequate, "courts should look to 'the amount of time that elapsed between the notice and remedial action, the options available to the employer, possibly including employee training sessions, transferring the harassers, written warnings, reprimands in personnel files, or termination, and whether or not the measures ended the harassment.'" *Johnson v. Shinseki*, 811 F. Supp. 2d 336, 350 (D.D.C. 2011) (quoting *Curry*, 195 F.3d at 662 n.17). Ms. Jackson's own allegations show that the District promptly and appropriately responded to the alleged harassment. Here, Ms. Lundgren met with Ms. Jackson the day after the latter emailed her with concerns about Ms. Peña's behavior. *See* Compl., ECF No. 1 ¶¶ 48-49. Ms. Lundgren also spoke with Ms. Peña, who agreed to stay away from Ms. Jackson and apologized. *Id.* ¶¶ 58-59. Ms. Lundgren acted quickly once she learned of Ms. Jackson's complaints about Ms. Peña, and her discussion with Ms. Peña resulted in Ms. Peña agreeing to cease the behavior about which Ms. Jackson complained. *See* Compl., ECF No. 1 ¶¶ 48-49, 58-59 (stating that within two days of the incident, Ms. Lundgren relayed to Ms. Jackson that Ms. Peña apologized and stated that "it would not happen again"). There is no allegation that the behavior happened again. *See generally*

*id.* Ms. Jackson does not allege that she reported the behavior that occurred at CentroNia prior to reporting the behavior that occurred in March 2023. *See generally* Compl., ECF No. 1. The District apparently had no knowledge of this prior incident, *see Curry*, 195 F.3d at 660; and therefore could not have anticipated there to be any future issues between the two women. Because Ms. Jackson fails to allege facts supporting *respondeat superior* liability, Count I of the Complaint will be dismissed.

**2. Race Discrimination (Count IV)**

To state a *prima facie* case of racial discrimination under Title VII, a plaintiff must show that "(1) [they are] a member of a protected class, (2) [they] suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [their] employer took the action because of [their] membership in the protected class)." *See Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). A plaintiff must "allege some facts that demonstrate [their] race was the reason for defendant's actions and cannot merely invoke his race in the course of a claim's narrative." *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (citing *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990), *aff'd sub nom. Bray v. Hebble*, 976 F.2d 45 (D.C. Cir. 1992)).

The parties dispute whether the third prong has been satisfied: whether Ms. Jackson's employer took an unfavorable action *because of* Ms. Jackson's race. *See* Mot., ECF No. 12 at 28–29; Opp'n, ECF No. 16 at 32; Reply, ECF No. 17 at 17–19. Ms. Jackson claims that Ms. Lundgren "subjected her to racial discrimination when she refused to allow [her] to transfer out of a kindergarten classroom . . . unlike her Hispanic colleague that was allowed to switch upon request." Compl., ECF No. 1 ¶ 182. She also claims that she was "treated unfavorably as compared with her Hispanic colleague, [Ms. Peña]," when she received a RIF letter, which Ms. Peña did not. *Id.*

The Court agrees with Defendants that the allegation that her Hispanic colleagues were allowed to switch upon request are "mere conclusory invocations" of race for legitimate employment decisions. Mot., ECF No. 12 at 28–29; *see also Doe #1*, 554 F. Supp. 3d at 102 ("[A] plaintiff must allege some facts that demonstrate his race was the reason for defendant's actions and cannot merely invoke his race in the course of a claim's narrative." (citation modified)). Ms. Jackson acknowledges that she was asked to switch classrooms with the Hispanic colleague who made the request because two colleagues "were not getting along." Compl., ECF No. 1 ¶ 91. Ms. Jackson does not allege any other facts that would indicate that she was switched with this colleague due to her race. In fact, she acknowledges that she

was asked to switch because of the personality conflict between the two coworkers. *See* Opp'n, ECF No. 16 at 32.

Ms. Jackson also argues she was "treated unfavorably as compared with her Hispanic co-worker, [Ms. Peña]", Compl., ECF No. 1 ¶ 182; and that Ms. Peña, "who was . . . Hispanic, was not issued a RIF," despite Ms. Jackson's complaints to Ms. Lundgren that Ms. Peña sexually assaulted her. Opp'n, ECF No. 16 at 32. "Where a plaintiff seeks an inference of discrimination based on 'disparate treatment,' the plaintiff must further show that 'all of the relevant aspects of her employment situation were "nearly identical" to those' of the other employees who did not suffer similar adverse employment actions." *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). Ms. Jackson fails to allege facts that show that her employment situation was "nearly identical" to Ms. Peña's. In fact, Ms. Jackson indicates that their employment situations are *not* identical. Although both are paraprofessionals, they had different job titles and responsibilities: Ms. Jackson was "an educational aide and paraprofessional," Compl., ECF No. 1 ¶ 9; while Ms. Peña is a "dual language paraprofessional," *id.* ¶ 12. Moreover, Ms. Jackson alleges that she believes that Ms. Peña should have been let go instead of her because of her allegations of sexual harassment, not because Ms. Jackson was

being treated differently because of her race. *Id.* ¶ 182; Opp'n, ECF No. 16 at 32 (stating that Ms. Peña was not issued a RIF, "even after [Ms. Lundgren] knew from [Ms. Jackson] and the security videos . . . that [Ms. Peña] sexually assaulted [Ms. Jackson], [Ms. Jackson] informed her about two prior incidents [Ms. Peña] committed against her, years prior, and LMER substantiated [Ms. Jackson's] claims against [Ms. Peña]").

Accordingly, because Ms. Jackson has not pled sufficient facts that she suffered an unfavorable employment action because of her race, Count IV of the Complaint will be dismissed.

### 3. Reprisal Based on EEO Activity (Count VI)

Ms. Jackson's remaining claim is that that the District retaliated against her because she "requested a reasonable accommodation and reported sexual harassment, discrimination, and retaliation," and because she "requested FMLA" leave. Compl., ECF No. 1 ¶ 204.[6]

The statutes[7] she claims have been violated all have a similar standard to prove a *prima facie* case of retaliation: (1)

---

[6] Defendants argue that Ms. Jackson "refram[ed] her alleged FMLA 'discrimination' claim as one for retaliation" in her Opposition, Reply, ECF No. 17 at 21. Her Complaint, however, clearly alleges that she was retaliated against for requesting leave under the D.C. FMLA. *See* Compl., ECF No. 1 ¶¶ 202, 204, 208.

[7] Ms. Jackson includes in her Complaint that the "unwelcome retaliatory incidents" also violated her "right to equal protection under the Fourteenth Amendment of the U.S. Constitution." Compl., ECF No. 1 ¶ 208. However, nowhere else in

that she engaged in protected activity, (2) that she suffered an adverse or materially adverse employment action (depending on the statute), and (3) there was a causal relationship between the two. *See Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (Rehabilitation Act); *McGrath v. Clinton*, 666 F.3d 1377, 1379–80 (D.C. Cir. 2012) (Title VII); *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007) (ADA); *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 108 (D.D.C. 2013) (D.C. FMLA). "[A] plaintiff need not plead each element of his *prima facie* case to survive a motion to dismiss." *Jackson v. Dist. Hosp. Partners, L.P.*, No. CV 18-1978, 2019 WL 3502389, at *5 (D.D.C. Aug. 1, 2019). The parties dispute whether Ms. Jackson suffered an adverse employment action and if there was a causal connection between the two.[8]

**a. Adverse Employment Action**

Ms. Jackson alleges that she has suffered adverse employment actions due to her "opposition and/or protected activity" because Defendants did not

> remedy[] the issue of the student in Ms. Guillen's class regularly trying to injure

her Complaint nor in the briefing materials does this argument appear again, except as a conclusory statement with no legal support. *See* Compl., ECF No. 1 ¶¶ 129, 170, 208. Therefore, the Court will disregard this argument.

[8] Defendants state that "[t]he same operative facts discussed in section III apply [to their argument in section VI]." Mot., ECF No. 12 at 31. The Court will consider their arguments in section III as incorporated into their arguments in section VI.

> her, preventing her from allowing her to transfer completely out of Ms. Guillen's class to avoid that student, not properly responding to Plaintiff's concerns regarding the sexual assaults perpetrated on her by [Ms. Peña], and ultimately, terminating her.

Compl., ECF No. 1 ¶ 206.

Under Title VII, a plaintiff must allege that she suffered a "materially adverse action" in her retaliation claim, rather than simply an "adverse employment action." *See Rhone v. Rubio*, No. 24-3389, 2025 WL 3017791, at *9 (D.D.C. Oct. 28, 2025). "A 'materially adverse action' is one that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 55 (D.D.C. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. White* ("*Burlington*"), 548 U.S. 53, 68 (2006)). "It does not reach every minor and even trivial employment action . . . and an adverse action for this purpose typically . . . involves a significant change in employment status, such as hiring, firing, failing to promote, or reassignment with significantly different responsibilities." *Id.* (citation modified).

"The D.C. Circuit has held that the framework for analyzing anti-retaliation suits under the Rehabilitation Act mirrors that applied for retaliation suits under Title VII of the Civil Rights Act." *Hovsepyan v. Blaya*, 770 F. Supp. 2d 259, 269 (D.D.C. 2011) (citing *Smith v. District of Columbia*, 430 F.3d

450, 455 (D.C. Cir. 2005)). The standard is the same under the ADA. *See Shinabargar v. Bd. of Trustees of Univ. of D.C.*, 164 F. Supp. 3d 1, 16 (D.D.C. 2016) (stating the same standard under the ADA as the Rehabilitation Act's for retaliation claims). "[P]urely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (citation modified).

Ms. Jackson claims that she was retaliated against by the Defendants under the D.C. FMLA. The standard for establishing a *prima facie* case of retaliation under the D.C. statute is the same as it is under the federal FMLA statute, which, in relevant part here, requires that she show that she suffered an "adverse employment action." *Alford*, 945 F. Supp. 2d at 108. The D.C. Circuit has not yet determined whether the materially adverse standard, rather than the lower standard of "adverse action," applies to FMLA claims. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162–63 (D.C. Cir. 2015).

The Court concludes that Ms. Jackson has not alleged sufficient facts to support that she suffered a materially adverse employment action with respect to her dissatisfaction with the handling of her complaint against Ms. Peña. She disagrees with Ms. Lundgren's handling of her complaint against Ms. Peña, but her disagreement is not a materially adverse

employment action. *See Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 70 (D.D.C. 2012) ("A materially adverse action is one that results in significant harm or hardship, such as affecting the plaintiff's position, grade level, salary, or promotion opportunities and might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (citation modified)). Furthermore, Ms. Jackson was not dissuaded from making a charge of discrimination, demonstrated by the fact that she filed her EEO charge after she complained to Ms. Lundgren. *See* Compl., ECF No. 1 ¶¶ 48, 68 (establishing the timeline of Ms. Jackson's complaints to Ms. Lundgren and the EEOC). Accordingly, because Ms. Jackson fails to allege sufficient facts to state a claim of retaliation regarding the handling of her complaint about Ms. Peña's behavior, her claim of retaliation stemming from her dissatisfaction of how her complaint was handled will be dismissed.

It is also clear that Ms. Jackson was not satisfied with Ms. Lundgren's attempts to accommodate her by moving her to the kindergarten classroom part-time. However, dissatisfaction with a reassignment is not a "materially adverse" action. *See Bonnette*, 907 F. Supp. 2d at 70 ("The law is clear that purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." (citation modified)). Again, Ms. Jackson does

not allege facts that would show that the actions taken by Defendants regarding her accommodation request would "reasonably dissuade" a reasonable employee from making a charge of discrimination. Therefore, the Court will also dismiss Ms. Jackson's retaliation claim as it pertains to her classroom assignment.

Drawing all inferences in her favor, Ms. Jackson argues that she was terminated while and because she was on FMLA leave. *See* Compl., ECF No. 1 ¶¶ 77, 83, 113–20; Opp'n, ECF No. 16 at 37. She also alleges that her termination violated Title VII, the ADA, and the Rehabilitation Act. *See* Compl., ECF No. 1 ¶¶ 201–15 (Count VI).

For the reasons explained below, the Court determines Ms. Jackson has alleged sufficient facts that her termination was a materially adverse employment action, which satisfies the second prong of the Title VII, Rehabilitation Act, and ADA standard, and the "adverse employment action" standard under the D.C. FMLA. The Court will consider her arguments regarding causal connection only in regard to her termination.

**b. Causal Connection**

The parties disagree whether Ms. Jackson has sufficiently alleged that there was a causal connection between Ms. Jackson's protected activity and her termination. *See* Mot., ECF No. 12 at 31–32; Opp'n, ECF No. 16 at 34–37; Reply, ECF No. 17 at 21–22.

Defendants argue that Ms. Jackson's "Complaint fails because her EEO complaint is not temporally proximate to her termination three months later." Mot., ECF No. 12 at 31 (citing *Burlington*, 548 U.S. at 68).

A plaintiff can establish that "a causal link between the protected activity and the adverse employment action [is] satisfied merely by close temporal proximity between the two events." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 200 (D.D.C. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.s. 268, 273 (2001)). When using temporal proximity as the sole method to establish a causal link, the two events must have occurred "very close in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). "Although neither the Supreme Court nor the D.C. Circuit has established a bright-line three-month rule, three months is perceived as approaching the outer limit." *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016) (cleaned up); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) ("Although the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation, neither the Supreme Court nor this court has established a bright-line three-month rule."). However, "[o]n a motion to dismiss, it is sufficient for

plaintiffs to 'plead causation simply by alleging that the adverse actions were caused by [their] protected activity.'" *Guisbert v. Wash. Convention & Sports Auth.*, Civil No. 19-cv-3828, 2020 WL 5798444, at *2 (D.D.C. Sept. 29, 2020) (citing *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016)); *see also Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010) (collecting cases).

Defendants argue that Ms. Jackson has not shown that there was a causal link between her EEO complaints (made in early March) and FMLA leave (which was approved in late March), and her termination, which occurred in June. *See* Mot., ECF No. 12 at 31–32; Reply, ECF No. 17 at 21–22. While Ms. Jackson received the letter informing her of the reduction in force and her termination in late June 2023, *see* Compl., ECF No. 1 ¶ 116–17; the letter itself was dated May 24, 2023, *id.* ¶ 117. If the adverse employment action is receiving the notice itself, the temporal proximity between her protected activity and adverse employment action falls within three months. However, the Court need not decide whether the date of the notice or the date of her receipt of the notice controls. Ms. Jackson has sufficiently alleged to survive at this stage that she was terminated because of her EEO activity and because she took FMLA leave, and because "temporal proximity is not the only way to allege causation. . . at this early stage, plaintiff has alleged just enough for her

retaliation claim . . . to survive a motion to dismiss." *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 202 (D.D.C. 2017).

Moreover, "[a] large gap between protected activity and retaliation is not necessarily fatal to a claim when the plaintiff can point to other factors leading to an inference of causation." *Lawson v. Sessions*, 271 F. Supp. 3d 119, 137 (D.D.C. 2017) (citation omitted). Ms. Jackson has also alleged that Ms. Lundgren pointed out that she had been in her office a lot and that she would support her requests to transfer, which Ms. Jackson "took . . . as a threat" for complaining about her coworker. *See* Compl., ECF No. 1 ¶¶ 51–54. Taken as true at the pleading stage, these facts support Ms. Jackson's arguments that there was a causal connection between her EEO complaints and FMLA leave and her termination.

Accordingly, Ms. Jackson has alleged sufficient facts to state a claim that she was terminated in retaliation for making an EEO charge and for taking FMLA leave, in violation of Title VII, the ADA, the Rehabilitation Act, and the D.C. FMLA statute.

## IV. Conclusion

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, ECF No. 12. Defendants' Motion to Dismiss Counts I to V, and VII to XI of the Complaint is **GRANTED**. Defendants' Motion to Dismiss Count VI of the Complaint is **GRANTED** regarding Ms. Jackson's complaints

of sexual assault and transfer from the classroom and **DENIED** regarding her termination.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**September 24, 2026**